**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANCISCO MEDERO** | |
| **v.** | **CIVIL ACTION** |
| **NBC MERCHANTS, INC., d/b/a T.J. MAXX OF PITTSTON DISTRIBUTION CENTER** | **NO.  16-6583** |

Baylson, J.                                                                                    August 3, 2017

## MEMORANDUM RE: MOTION TO DISMISS

In this case, Plaintiff Francisco Medero alleges that his former employer, NBC Merchants d/b/a T.J. Maxx of Pittston Distribution Center ("Defendant"), retaliated against him on account of his decision to file a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII and the Pennsylvania Human Relations Act ("PHRA").  Presently before the Court is Defendant's Motion to Dismiss.  For the reasons discussed below, Defendant's motion is granted.

### I.    Factual and Procedural History

Taking Medero's allegations as true, the factual background is as follows.  Medero worked as a logistics supervisor for Defendant starting in August 2004, maintaining an exemplary performance record throughout his employment.  (ECF 6, Am. Compl. ¶ 10.)   In December 2011, Medero felt discriminated against because of his race and national origin after he was spoken to in Spanish in front of his staff.  (Id. ¶ 11.)  As a result, Medero made a complaint to his manager, but no action was taken.  (Id. ¶¶ 12-14.)  Thereafter, Medero was terminated from his employment with Defendant, and, believing that the termination was due to discrimination, Medero filed a Charge of Discrimination with the EEOC.  (Id. ¶ 15.)  Medero and

Defendant resolved the discrimination charge by mutual agreement in May 2013. (Id.)

During this time, Medero pursued employment with various other companies, relying on the strength of his twenty-year experience in the retail field, including his seven-year tenure with Defendant, and his strong record of performance. (Id. ¶ 16.) Because the industry in which Medero works is small, there were a limited number of companies offering positions that fit the job profile that Medero was seeking. (Id. ¶ 18.) In March 2012, Medero interviewed with Michael's Distribution Center for the position of Operations/Logistics Supervisor, which has similar duties and responsibilities to the job that Medero performed for Defendant. (Id. ¶¶ 19-20.) During the interview, Medero discussed his prior employment with Defendant and confirmed that he knew various Michael's employees with whom he used to work at Defendant. (Id. ¶¶ 23-24.) Medero was assured that he would be given a follow-up interview, but he never heard from Michael's again after the initial interview. (Id. ¶¶ 22, 29.) A similar sequence of events occurred in October 2013, when Medero again interviewed with Michael's for the position of Operations/Logistics Supervisor, confirmed his acquaintance with various employees of Michael's with whom he had previously worked while he was employed by Defendant, was informed that he had an impressive resume, but never heard back about a second-round interview. (Id. ¶¶ 30-31.)

Still seeking employment, Medero interviewed for a job as a Supervisor at Home Depot on July 8, 2014. (Id. ¶ 38.) During the interview, Medero was asked if he knew various former employees of Defendant who were currently employed by Home Depot, including James Rollo, who served as a manager to Medero, and Mr. Rollo's son-in-law, who worked in Defendant's human resources department. (Id. ¶¶ 39-40; ECF 8, Pl.'s Opp'n at 12.) Medero confirmed his acquaintance with these individuals, but was never contacted for a follow-up interview. (Am.

Compl. ¶ 42.)  Finally, on July 15, 2014, Medero had a phone interview for a Supervisor position with Michael's, but was rejected for the position one week later.  (Id. ¶¶ 47-48.)  Medero believes that his unsuccessful pursuit of a job in his field is due to negative references about his employment that were provided by "former and current" employees of Defendant out of a desire to retaliate against him for his decision to file a charge of discrimination after his termination. (Id. ¶¶ 34, 41 49; Pl.'s Opp'n at 5.)  Medero also believes that none of Defendant's former employees who successfully obtained jobs at the companies where Medero interviewed had filed an EEOC charge.  (Am. Compl. ¶ 37, 43, 50.)

On September 18, 2014, Medero filed a Charge of Discrimination with the EEOC arguing that Defendant retaliated against him for filing the original EEOC charge and discriminated against him on the basis of race and national origin, by providing negative references to prospective employers (ECF 1, Compl., Ex. B).  Thereafter, on December 22, 2016, Medero filed the instant suit alleging violation of his statutory rights based on unlawful discrimination and retaliation under both Title VII (Count I), and the PHRA (Count II), seeking declaratory and injunctive relief, damages, and attorney's fees (ECF 1).  On May 18, 2017, Defendant filed a Motion to Dismiss (ECF 5).  Medero filed an Amended Complaint on June 6, 2017 (ECF 6).  On June 21, 2017, Defendant moved to dismiss Medero's Amended Complaint on the same grounds asserted in its original motion (ECF 7).  On June 30, 2017, Medero filed a Response in opposition to Defendant's Motion to Dismiss (ECF 8).  Thereafter, on July 7, 2017, Defendant filed a Reply in further support of its Motion to Dismiss (ECF 9).

## II.  Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  Warren Gen.

Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 556 n.3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint may be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies if the plaintiff does not submit a complaint to the EEOC or relevant state agency and obtain a right-to-sue letter, because both actions are prerequisites to filing suit under Title VII. Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). In considering a motion to dismiss on these grounds, a court may consider the EEOC administrative record without converting the motion into one for summary judgment. Concha v. Perfecseal, Inc., No. 13-5709, 2014 WL 4634965, at *1 n.1 (E.D. Pa. Sept. 15, 2014).

### III.    Discussion

**A. Time Barred Claims**

Defendant seeks partial dismissal of Medero's Amended Complaint on the grounds that two of the allegedly discriminatory incidents are time barred. Under Title VII, a claimant in Pennsylvania must file a charge of unlawful employment practice with the EEOC within 300 days of the alleged unlawful practice. 42 U.S.C. § 2000e5(e)(1); Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013). Similarly, a claimant must file a complaint with the PHRC within 180 days of the alleged discriminatory act. 43 Pa. Stat. Ann. § 959(h); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). These requirements apply to adverse employment actions. Noel v. The Boeing Co., 622 F.3d 266, 270 (3d Cir. 2010) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)). Indeed, the Supreme Court has been clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113-14 (reversing application of the continuing violations doctrine to discrete employment acts that occur outside the timely filing period).

Here, Plaintiff filed the EEOC charge alleging discrimination and retaliation in response to pursuing an EEOC claim on September 18, 2014. (Compl., Ex. B). Thus, only allegedly wrongful acts that occurred after November 22, 2013 (300 days prior to the September 18, 2014 filing date) fall within the scope of Title VII. Similarly, only allegedly wrongful acts that occurred after March 22, 2014 (180 days prior to the September 18, 2014 filing date) fall within the scope of the PHRA. Medero contends that Defendant engaged in retaliatory conduct by providing a negative job reference on four occasions: March 2012; October 2013; July 8, 2014; and July 15, 2014. (Am. Compl. ¶¶ 19, 30, 38, 47.) Per the Supreme Court's holding in Morgan, Medero's claims arising from the March 2012 and October 2013 incidences will be

time barred unless we find that the discovery rule, equitable tolling, or continuing violations doctrine applies.  See Morgan, 536 U.S. at 114 (noting employment discrimination filing periods remain subject to equitable doctrines).

The discovery rule "postpone[s] the beginning of the statutory limitations period from the date when the alleged unlawful employment practice occurred, to the date when the plaintiff actually discovered he or she had been injured."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994).  Medero does not defend his argument on the timeliness point by arguing that he chose to postpone filing his EEOC claim because he was unaware of the allegedly retaliatory action.  To the contrary, Medero contends that he became aware of the negative references that Defendant allegedly provided when he was not "contacted by the prospective employer" after "confirming his acquaintance with the former NBC Merchants employees and[] providing NBC Merchants contact information for a reference."  (Pl.'s Opp'n at 20.)  Although he does not state when he discovered he had been passed over for these two positions, it was presumably within a couple weeks of the initial interview.  At that point in time, according to his own briefing, he "discovered he . . . had been injured" and the statutory limitations period began accruing.  Oshiver, 38 F.3d at 1386.  There is no basis on which to apply the discovery rule to Medero's case for these two incidences.

Medero's claim may also be saved via equitable tolling, which "functions to stop the statute of limitations from running where the claim's accrual date has already passed."  Id. at 1387.  There are three situations in which equitable tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff [with respect to] the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong

forum." Id. "Equitable tolling is an extraordinary remedy which should be extended only sparingly." Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005).

Medero provides no basis on which to toll his claim because he neither avers that Defendant had anything to do with his failure to timely file it nor that he was prevented from asserting his rights in "some extraordinary way." Medero centers his argument for equitable tolling on the fact that Defendant failed to contact him when references were requested, and that he therefore did not know to reach out to the prospective employers at that time, ostensibly to hear from them that Defendant's agents had provided negative job references. Setting aside the total lack of facts alleged by Medero to support this position, even if it were sufficiently pleaded, it would not permit the March 2012 and October 2013 instances to be equitably tolled. First, Medero has failed to show that "[his] employer's own acts or omissions have lulled [him] into foregoing prompt attempts to vindicate . . . [his] rights." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 (3d Cir. 1983) (quoting Bonham v. Dresser Indus., Inc., 569 F.2d 187, 193 (3d Cir. 1977)). Medero has not alleged, for instance, that Defendant assured him that the EEOC adjudication would not bear on any reference they provided and that he was therefore told something that "deceived [him] into postponing the filing of a claim." See Meyer, 720 F.2d 303, 305, 308 (reversing grant of summary judgment on age discrimination claim because material dispute existed regarding whether claim should be equitably tolled, where the plaintiff had asked his employer why he was terminated and was told that it was due to a reorganization, causing the plaintiff not to sue). Simply failing to tell Medero that its representatives had been contacted is not deceitful and, in any case, Medero knew that his prospective employers were going to check his references at some point after his initial interview with each. (Am. Compl. ¶¶ 22, 31.) If, once he discovered that he had not gotten the two positions at issue, he feared it was because of

something his references had communicated to the prospective employers, he could have at that point reached out to Defendant or its agents and gotten more information about what had been said.

Relatedly, Medero cannot avail himself of the equitable tolling doctrine due to his failure to show the requisite diligence. "A petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some 'extraordinary circumstance stood in [the] way.'" Satterfield v. Johnson, 434 F.3d 185, 188 (3d Cir. 2006) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997) (finding no grounds for equitable tolling where plaintiff received misleading advice from an EEOC employee but conducted no further inquiry into the proper procedures for filing a claim, because "[r]unning throughout the equitable estoppel cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim"). Here, Medero does not allege that he attempted to learn what Defendant's representatives had said to Medero's prospective employers but was thwarted in some way by Defendant, as the plaintiff in Meyer did. For these reasons, there is no basis on which to toll Medero's claims regarding the March 2012 and October 2013 incidences.

Finally, Medero cannot salvage his late-filed claim by application of the continuing violations doctrine. This doctrine holds that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). However, the Supreme Court has held that a discrete discriminatory act such as the refusal to hire, "even when related to acts alleged in timely filed charges," is not subject to the doctrine. Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 113-14 (2002). Rather, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." Id.; see O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (applying Morgan to find that the discrete acts that the plaintiff alleged "cannot be aggregated under a continuing violations theory"). Therefore, any statements made by Defendant or its agents in retaliation for Medero's filing his EEOC charge or for discriminatory reasons are "discrete retaliatory or discriminatory act[s]" for which the statute of limitations began running on the day that Medero learned the statements had been made. Under Morgan, Medero cannot avail himself of the continuing violations doctrine.

For the foregoing reasons, insofar as Medero's claims under Counts I and II relate to the March 2012 and October 2013 incidences, they are time barred. Therefore, Medero may not state a claim under either Count based on Defendant's allegedly discriminatory or retaliatory actions in March 2012 and October 2013.

### B. Merits of Medero's Retaliation Claim

Proceeding to the merits of Medero's claims related to the two July 2014 incidences, we must determine whether Medero has sufficiently pleaded facts to render plausible a claim for retaliation under Title VII (Count I) and the PHRA (Count II).[1] Under the anti-retaliation provision of Title VII, it is unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

---

[1] The analysis required for adjudicating Medero's claim under the PHRA claim is identical to a Title VII inquiry; therefore, Count II will not be addressed separately. See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000).

To state a *prima facie* case for retaliation, a plaintiff must show that (1) he was engaged in a protected activity; (2) his employer took adverse action against him; and (3) there is a causal connection between his participation in the protected activity and the adverse employment action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). A plaintiff pleading employment discrimination and retaliation does not have to meet the *prima facie* standard in order to survive dismissal; rather, his complaint must simply contain factual allegations sufficient to raise a reasonable expectation that discovery will reveal the three aforementioned elements. Connelly v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016); see also Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008) (discussing the interaction between the heightened pleading standard required by Twombly and the three-element *prima facie* case of retaliation under Title VII and concluding that the plausibility paradigm applies).

Because participating in an EEOC investigation is a protected activity and Medero's original EEOC complaint was for alleged discrimination that was protected under Title VII, only elements (2) and (3) are in dispute. See Slagle v. Cnty. of Clarion, 435 F.3d 262, 267 (3d Cir. 2006) (noting that the participation clause of the anti-retaliatory provision is intentionally broad and that the filing of a formal complaint is protected so long as it alleges discrimination based on race, color, religion, sex, or national origin, which are the categories protected by Title VII).

### i. Adverse Action Taken by Employer

The second element required to state a claim for retaliatory conduct that violates Title VII is an allegation that the employer took a materially adverse action that would deter a reasonable person from engaging in protected activity. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006). In Burlington Northern, the Supreme Court made clear that whether an

action is materially adverse depends on the particular circumstances of the situation; the phrasing of the standard in general, objective terms ensures that context will be taken into consideration. Id. at 69.  The Supreme Court listed the following as examples of actions that may be materially adverse: the FBI's refusal to investigate death threats against an agent and his wife, the filing of false criminal charges against a former employee, changing the work schedule of a parent who has caretaking responsibilities for young children, and excluding an employee from a weekly training lunch that contributes to professional advancement.  Id. at 63, 69.  As is clear from those examples, retaliation can also consist of actions that are unrelated to work or cause harm outside of the workplace.  Id. at 63.  The provision of negative references that bar an individual from obtaining work constitutes a materially adverse action because it would deter a reasonable person from pursuing a charge of discrimination, and it is well within the scope of other incidences found to be materially adverse in this Circuit.  See, e.g., LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (finding that termination from employment would discourage a reasonable person from filing a complaint of discrimination); Moore v. City of Phila., 461 F.3d at 348 (holding that reassignment of a police officer who had earned goodwill and built a relationship with the community would deter an individual from pursuing protected activity); Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001) (noting that a college dean's recommendation that the plaintiff professor not be retained constituted a materially adverse action).

Instead, Defendant's primary refutation of Medero's ability to establish this element of his retaliation claim rests on its argument that Medero has pleaded no facts to support holding Defendant vicariously liable for the actions of its former and current employees, who are the

alleged wrongdoers in this case. (ECF No. 5, Def.'s Mot. at 5). For the reasons discussed below, we agree that Medero's failure on this front is fatal to his claims.

An employer can be subject to vicarious liability under Title VII for the actions of its employees because the statutory definition of "employer" includes "any agent of such an [employer]." 42 U.S.C. § 2000e. Agency law, in turn, is defined by the common law of the jurisdiction. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754 (1998). Applicable Third Circuit precedent establishes that an agency relationship exists "when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 120 (3d Cir. 2013) (quoting AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1434 (3d Cir. 1994)). An agent can either act with actual authority, meaning that at the time of the action, the agent reasonably believes that the principal wishes the agent to take such action, or apparent authority, meaning that the principal causes people with whom the agent deals to reasonably believe that the agent has authority, despite the lack of an actual agency relationship. Id. Here, there are two relevant categories of individuals whom Medero alleges provided retaliatory references: former employees, and current employees. (Pl.'s Opp'n at 5.)

As to the former, Medero alleges no facts to support an assertion that Defendant consented to have Mr. Rollo, Mr. Rollo's son-in-law, or any other former employee provide references to Medero's prospective employers based on his work with the company. Therefore, if Defendant is to be classified as an employer of the source of the allegedly retaliatory conduct, then we must find that it exercised apparent authority over its former employees. For two reasons, this conclusion is unsupportable. First, there is no basis for holding a former employee vicariously liable as an agent of his previous employer for events that occurred after he left the

employ of the company. Second, and relatedly, Medero's allegations lack facts that are demonstrative of Defendant's right to control the "manner and means by which the product is accomplished" that is crucial in deciding whether an entity is an employer for purposes of Title VII. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989)); see also Plaso v. IJKG, LLC, 553 F. App'x 199, 204 (3d Cir. 2014) (providing a test that employs three indicia of control to determine whether an entity is an employer, and thus vicariously liable, namely (1) which entity paid the individual; (2) which entity hired and fired the individual; and (3) which entity had control over the individual's daily employment activities) (citing Covington, 710 F.3d at 119).

Medero pleads no facts establishing that Defendant had the right to control the content of the references that were allegedly provided by the former employees. To the contrary, all of the allegations contained in Medero's Amended Complaint favor not holding Defendant vicariously liable under the control test. First, the former employees were presumably paid by their new employers, not Defendant, at the time the references were provided. Second, because Defendant did not employ any of the former employees at the time of the references, Defendant would have had no control over their daily employment activities. Since there is no basis from which to conclude that Defendant exercised the requisite degree of control over the former employees, it would be improper to hold it vicariously liable for any action the former employees may have taken.

As to the references allegedly provided by current employees, while Medero alleges that Defendant's policy is to only provide information about dates of employment in a reference, there is no reason to believe that Defendant's current employees provided anything more than this. The lack of specificity about these individuals, other than occasional references to

anonymous "current employees" who allegedly provided references, renders Medero's claim that Defendant should be liable for their actions based on an actual authority analysis wholly unsupported and not viable.

Medero supports the appropriateness of holding Defendant vicariously liable by referencing the statement in his Amended Complaint that he "believes that Defendant . . . , by and through its employees, agents and/or servants . . . has engaged in unlawful employment practices . . . by intentionally and erroneously providing both Michael's and Home Depot Distribution Centers with negative job references regarding Mr. Medero's past employment . . ., [which] actions were taken in furtherance of retaliation for Mr. Medero's filing a charge of discrimination with the EEOC/PHRC."  (Pl.'s Opp'n at 18 (quoting Am. Compl. ¶ 49).) However, this is precisely the type of conclusory allegation that, under the heightened pleading standard of Twombly and Iqbal, is insufficient to survive a motion to dismiss.  See Twombly, 550 U.S. at 555 (holding that a formal recitation of the elements of a constitutional discrimination claim is insufficient at the pleading stage); see also Iqbal, 556 U.S. at 681 (noting that allegations that are merely conclusory are not entitled to the presumption of truth). Moreover, a subjective *belief*, unsupported by independent factual allegations, is insufficient to survive dismissal.  See generally Magerr v. City of Phila., No. 15-4264, 2016 WL 1404156, at *10 (E.D. Pa. Apr. 11, 2016) (finding that a complaint containing unsupported allegations that the defendant was motivated by a discriminatory attitude did not set forth a plausible claim of Title VII discrimination); Eldeeb v. Potter, 675 F. Supp. 2d 521, 523 (E.D. Pa. 2009) (holding that where a complaint is completely devoid of any facts that could support the plaintiff's claim of alleged harassment in violation of Title VII, dismissal is appropriate).  Without more than a subjective belief to support holding Defendant vicariously liable for the allegedly offensive

references, Medero has failed to establish the second prong of his retaliation claim as to the conduct of both Defendant's current and former employees.

### ii. Causal Connection

Even if Medero had sufficiently pleaded that Defendant may be responsible for the actions of its current and former employees, he has failed to establish the third element of a retaliation claim, which requires a plaintiff to show that there is a causal connection between the adverse action and the protected activity. In <u>University of Texas Southwest Medical Center v. Nassar</u>, 133 S. Ct. 2517 (2013), the Supreme Court held that a "desire to retaliate" must have been the but-for cause of the challenged employment action in order for a plaintiff to satisfy the causal connection mandated under the anti-retaliation provision of § 2000e-(3)(a). <u>Id.</u> at 2528. The Court noted that its purpose in establishing this higher standard of causation was to ensure "fair and responsible allocation of resources in the judicial and litigation systems." <u>Id.</u> at 2531.

Interpreting <u>Nassar</u>, the Third Circuit has held that temporal proximity can be suggestive of causation. <u>See</u> <u>Blakney v. City of Phila.</u>, 559 F. App'x 183, 185-86 (3d Cir. 2014) (stating that a two-day window between the protected activity and the adverse action satisfies temporal proximity but a period of more than ten days requires supplemental evidence). In fact, temporal proximity is Medero's primary argument in support of his assertion that he has sufficiently pled the elements of retaliation. (Pl.'s Opp'n at 16.) However, when an extended period of time separates the protected activity from the adverse action, the "timing plus other evidence" test must be used. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000). Here, Medero's involvement in the protected activity, *i.e.* pursuing an EEOC investigation when he believed his termination was due to discrimination, concluded in approximately May 2013 when the matter was resolved by mutual agreement. (Am. Compl. ¶ 15). This is over one year before

the allegedly retaliatory actions, which occurred at some point after Medero's interviews with Home Depot and Michael's on July 8, 2014 and July 15, 2014, respectively, and considerably exceeds the threshold at which temporal proximity is sufficient to establish causation. (Am. Compl. ¶¶ 38-41, 47-49); see generally LeBoon, 503 F.3d at 233 (finding that three months is not unusually indicative of temporal proximity); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (holding that a two-month window is not an unduly suggestive temporal relationship adequate to support causation). Therefore, Medero cannot rely merely on temporal proximity to establish the causation element of his retaliation claim.

Instead, he must provide "other evidence" that is suggestive of retaliatory motive. See Blakney, 559 F. App'x at 186 (listing as two examples of "other evidence" that would satisfy the "timing plus" test the subjection of the employee to constant warnings and inconsistent statements given by the employer as to why the employee was terminated). Medero has not pleaded facts showing that independent conduct corroborates his assertion that temporal proximity establishes causation. In particular, the Amended Complaint provides no basis from which to conclude that the individuals who provided the allegedly retaliatory references knew about Medero's EEOC claim, much less were motivated by a desire to retaliate in their decision to provide negative references. Although Medero alleges that numerous "former and current employees" provided negative job references, he only names two specific individuals: Mr. Rollo and Mr. Rollo's son-in-law, both of whom obtained employment with Michael's after they left their jobs with Defendant. (Pl.'s Opp'n at 5; Am. Compl. ¶¶ 40-41.) While Mr. Rollo knew Medero from serving as his manager and thus could have had known about his EEOC claim, Medero provides no context for the timing of their relationship; therefore, it is equally plausible that Mr. Rollo left his employment with Defendant for Michael's well before the discriminatory

event that prompted Medero's allegedly improper termination. (Pl.'s Opp'n at 12.) Similarly, while Medero alleges that Mr. Rollo's son-in-law worked in Defendant's Human Resources Department, and therefore likely would have had access to information about Medero's EEOC investigation, there is no allegation that the timing of his employment was such that he would have been made aware of the claims and would have had a reason to retaliate against him.

Without this link, there is no sound basis from which to conclude that Mr. Rollo and his son-in-law knew about and were angered by the EEOC investigation to the extent that they were motivated to provide a negative reference out of retaliation. Additionally, Medero alleges "upon information and belief" that none of Defendant's former employees who obtained the positions that he interviewed for had filed charges with the EEOC/PHRC. (Am. Compl. ¶ 50). However, without more evidence, circumstantial or otherwise, this is insufficient to establish retaliatory animus great enough to have motivated Defendant to take adverse action against Medero over one year after the investigation concluded.

The instant case is distinguishable from a situation where additional evidence corroborates the alleged retaliatory animus that caused the defendant to act in a way that violated the plaintiff's rights under Title VII. For example, in <u>Connelly</u>, the plaintiff adequately pled the causation element of her retaliation claim because, in addition to the temporal proximity suggested by the defendant employer's decision not to rehire the plaintiff for seasonal work, she alleged that her relationship with her male supervisors became "increasingly strained" and "gradual[ly] deteriorate[ed]" after she filed multiple complaints about sexual harassment against her supervisor. <u>Connelly</u>, 809 F.3d at 792-93 (reversing dismissal of the plaintiff's retaliation claim because the factual allegations supporting her contention that her relationship with her employer worsened after she filed complaints of sexual harassment could be "construed to

support a reasonable inference of a causal connection between the protected act and the adverse employment action").

Unlike Connelly, where independent factual allegations corroborated the employer's alleged retaliatory intent, thereby adequately establishing the causal connection between the protected activity and the adverse action, here Medero does not plead any *facts* to establish a plausible case for but-for causation. The only support that Medero has for his position that the negative references were motivated by a desire to retaliate is his subjective belief, which, as discussed previously, is insufficient to adequately plead a claim under Title VII. See Magerr, 2016 WL 1404156 at *10 (dismissing the plaintiff's Title VII claim for a hostile work environment because the complaint lacked facts to show that the defendant was motivated by a discriminatory attitude). Therefore, there are insufficient factual allegations from which to conclude that Medero's decision to initiate the original EEOC investigation was the but-for cause of Defendant's provision of negative job references. Said differently, Medero's Amended Complaint contains no support for the conclusion that Defendant would have provided a positive job reference had Medero not filed the EEOC charge.

In summary, the facts alleged in the Amended Complaint, taken as a whole, do not raise a reasonable expectation that discovery will reveal evidence that Medero's participation in an activity protected by Title VII was the cause of retaliatory conduct constituting a materially adverse action taken by Defendant. Even taking for granted that providing a negative job reference is an adverse action, Medero has not adequately pleaded facts to establish the propriety of holding Defendant vicariously liable, nor has he demonstrated the required but-for causation. Therefore, under Burlington Northern, Nassar, and the precedential Third Circuit opinions discussed in the foregoing sections, his claim must be dismissed.

### C. Merits of Medero's Discrimination Claim

We now turn to an analysis of Medero's discrimination claims arising out of the two July 2014 incidences, which, as stated above, proceeds identically under Title VII (Count I) and the PHRA (Count II). Under these statutes, it is illegal for employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where the plaintiff does not have direct evidence of discrimination, such as is the case here, his claim is analyzed pursuant to the burden-shifting framework set forth in McDonnell Douglass Corporation v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff must show: (1) membership in a protected class, (2) that he was qualified for the position; (3) that he suffered an adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of unlawful discrimination. Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003). Medero is Hispanic and therefore has satisfied the first prong. Regarding the second prong, it is not disputed that he was qualified for the positions he sought at Michael's and Home Depot. But, as discussed above, Medero has failed to show that he suffered an adverse employment action due to the actions of Defendant or any agent of Defendant. Although that alone sounds the death knell for his discrimination claim, for the sake of thoroughness we proceed to analyze whether he has proffered any facts showing an inference of unlawful discrimination, as required under the fourth prong listed above.

To plead an inference of discrimination, a plaintiff can either: "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on

circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." Greene v. Virgin Islands Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014). In order to "survive a motion to dismiss, [the plaintiff does] not need to establish the elements of the *prima facie* case; [he] merely need[s] to 'put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Groeber v. Friedman & Schuman, P.C., 555 F. App'x 133, 135 (3d Cir. 2014) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009)). The plaintiff must plead sufficient facts to allow the factfinder to infer that discrimination was the reason for the adverse employment action. Golod v. Bank of America Corp., 403 F. App'x 699, 702 (3d Cir. 2010).

Here, in support of its motion, Defendant argues that Medero's discrimination claim is "wholly conclusory" and devoid of factual support. (Def.'s Mot. at 11-12.) Medero does not refute this characterization but rather, in response, reiterates that his original EEOC charge was based on allegations of racial and national origin discrimination. (Pl.'s Resp. at 18.) This argument misses the mark. The question is not whether Medero alleged discrimination in his EEOC charge but rather whether in this case he can support an assertion that Defendant's agents provided negative job references to Michael's and/or Home Depot out of discriminatory animus. We answer that question in the negative—Medero sets forth no basis for his belief that the allegedly negative references provided were done so because he is Hispanic. He neither states that other, non-Hispanic, individuals "were treated more favorably under similar circumstances" nor describes any circumstances that would indicate a nexus between his race and/or national origin and the alleged provision of negative references. Greene, 557 F. App'x at 195.

We recently confronted a similarly deficient complaint in Jenkins v. Polysciences, Inc.,

No. 16-6616, 2017 WL 1361689 (E.D. Pa. Mar. 29, 2017), where the plaintiff filed a discrimination claim under Title VII based on an allegation that he "was terminated for an altercation while [another] Caucasian employee involved was not." Id. at *3. In Jenkins, the plaintiff proffered a Caucasian comparator but failed to show any inference of racial discrimination; here, Medero does neither. Indeed, he alleges not a single fact that could support a plausible claim that Defendant, through its current or former employees, gave him poor references because of his race. Medero's Title VII and PHRA claims for discrimination under Counts I and II are therefore dismissed.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion is granted and Plaintiff's Amended Complaint is dismissed without prejudice, with leave to file a second amended complaint within fourteen days from the date of this Order.

O:\CIVIL 16\16-6583 Medero v. NBC\16cv6583 memo re mtd.docx